UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PRISCILLA BILLIPS, SHAKIMA JONES,
ELIZABETH RINK, and D.J., an infant by her
mother and natural guardian, PRISCILLA
BILLIPS,

                   Plaintiffs,

-against-

THE CITY OF NEW YORK, and
Detective John J. Edgar, Shield # 7149, Tax I.D.#918998;
Sergeant Sommer; Undercover Police Officer Shield #221;
John Doe #1; John Doe #2; John Doe #3; John Doe #4;
John Doe #5,

                   Defendants.
-----------------------------------------------------------------X

FILED
CLERK

2012 MAY 18 PM 3:57

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

CV 12 - 2515

**COMPLAINT**
**Plaintiffs Demand a Trial by Jury**

SUMMONS ISSUED

BRODIE, J.

AZRACK, M.J.

    Plaintiffs Priscilla Billips, Shakima Jones, Elizabeth Rink, and D.J., an infant by his mother and natural guardian, Priscilla Billips, by their attorney, James Concemore Neville, as and for their complaint, hereby allege as follows, upon information and belief:

### PARTIES, VENUE, AND JURISDICTION

1. At all times hereinafter mentioned, Plaintiff Priscilla Billips, an adult female, was a resident of Kings County, within the State of New York.

2. At all times hereinafter mentioned, plaintiff Shakima Jones, an adult female, was a resident of Kings County, within the State of New York.

3. At all times hereinafter mentioned, plaintiff Elizabeth Rink, an adult female, was a resident of Kings County, within the State of New York.

1

4. At all times hereinafter mentioned, plaintiff D.J., an infant male, was a resident of Kings County, within the State of New York;

5. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

6. At all times hereinafter mentioned, defendant Detective John J. Edgar, was a member of the NYPD, employed, retained, trained and supervised by New York City. John J. Edgar is sued herein in his official and individual capacities.

7. At all times hereinafter mentioned, defendant Sergeant Sommer was a member of the NYPD, employed, retained, trained and supervised by New York City. Sergeant Sommer is sued herein in his official and individual capacities.

8. At all times hereinafter mentioned, defendant Undercover New York City Police Officer Shield Number 221 was a member of the NYPD, employed, retained, trained and supervised by New York City. Undercover New York City Police Officer Shield Number 221 is sued herein in his official and individual capacities.

9. At all times hereinafter mentioned, defendant John Doe #1 was a member of the NYPD, employed, retained, trained and supervised by New York City. John Doe #1 is sued herein in his official and individual capacities.

10. At all times hereinafter mentioned, defendant John Doe #2 was a member of the NYPD, employed, retained, trained and supervised by New York City. John Doe #2 is sued herein in his official and individual capacities.

11. At all times hereinafter mentioned, defendant John Doe #3 was a member of the NYPD, employed, retained, trained and supervised by New York City. John Doe #3 is sued herein in his official and individual capacities.

12. At all times hereinafter mentioned, defendant John Doe #4 was a member of the NYPD, employed, retained, trained and supervised by New York City. John Doe #4 is sued herein in his official and individual capacities.

13. At all times hereinafter mentioned, defendant John Doe #5 was a member of the NYPD, employed, retained, trained and supervised by New York City. John Doe #5 is sued herein in his official and individual capacities.

14. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§1331, 1343 and 1367, and 42 U.S.C. §1983.

15. Venue is properly laid, pursuant to 28 U.S.C. §1391, *et seq.* in the Eastern District of New York, where plaintiffs and defendant City of New York reside, and where the actions complained of herein occurred.

16. That plaintiffs timely served Notices of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

17. At least 30 days have elapsed since service of plaintiffs' Notices of Claim and adjustment and payment thereof has been neglected or refused.

18. That the within action has been initiated within one year and ninety days of the happening of the events of which plaintiffs complain.

## RELEVANT FACTS

19. At all times relevant times concerning the factual basis for the Plaintiffs' complaint herein, plaintiff Elizabeth Rink is the mother of plaintiff Priscilla Billips, and is the grandmother of plaintiff infant D.J., and friend of plaintiff Shakima Jones.

20. On or about 1:00-1:30 p.m. on February 19, 2011, plaintiffs were lawfully present inside their residence, which was 92 Pilling Street, Brooklyn, New York 11207 ("the residence").

21. The defendant NYPD officers, dressed in plainclothes, and not identifying themselves as police officers, entered the plaintiffs' premises without permission or consent.

22. Defendants rang the door bell, and Plaintiff Billips went to answer the door. Without letting the Defendants into the residence, the Defendants asked if "Fresh" was there;

23. "Fresh" went to the door to see who was looking for him. "Fresh" opened the door, and Defendants told "Fresh" to step back, and a group of the defendants rushed into the street entrance to the building. This was done without showing any badges, arrest or search warrants, or without identifying themselves as police officers;

24. Plaintiff Shakima Jones, who was standing at the door of the entrance to the residence, witnessed the forced entry to the main entrance to the building, and Plaintiff Shakima Jones closed the door to the residence, and locked it.

25. Defendants rushed into the hallway, and defendants banged on the residence door. One of the defendants yelled and said he had a warrant, and waived a piece of paper for plaintiff Shakima Jones to see.

26. Believing that the defendants had a warrant, plaintiff Shakima Jones opened the door, but the defendants simply grabbed at plaintiff Shakima Jones.

27. Plaintiff Rink requested to see the warrant that the defendants claimed to have, but no warrant was shown, and it is believed that the defendants lied, and that they had no warrant at all that day to enter the residence of the plaintiffs.

28. No one of the resident plaintiffs ever gave defendants consent to enter the residence.

29. Defendants continued to try to grab plaintiff Shakima Jones out of the house, and plaintiff Shakima Jones refused to leave the residence until she was satisfied that the defendants had a warrant. Plaintiff Shakima Jones demanded to see the warrant that defendants claimed to have;

30. Plaintiff Shakima Jones broke away from the grip of the defendants, and at that moment, the defendants rushed into the residence, threw plaintiff Shakima Jones on the floor, and put handcuffs on her.
31. Plaintiff Shakima Jones again asked to see a warrant, and the defendants stated rudely, "what warrant?"
32. Defendants then forced Plaintiffs Billips, Jones, Rink, and the infant D.J. out of the residence, into the hallway area of the building;
33. All plaintiffs in addition to plaintiff Shakima Jones were handcuffed, except the infant D.J., who was sitting on the lap of his mother, plaintiff Priscilla Billips;
34. The plaintiffs were then held in the front entry area of the building, against their will and under force and coercion;
35. The defendants then proceeded to go into the residence while plaintiffs were being held outside of the home, in the entryway of the building;
36. Plaintiff Rink, noticing that the defendants were entering her private room, asked why the defendants were going into her room, and the defendants stated that this is what has to be done when the defendants get a call about guns;
37. One of the defendants came out of the residence and addressed all the plaintiffs and said you can be honest with us and tell us where the guns and the drugs are, or you all will go to jail, and the infant D.J. will go to "ACS";
38. Defendants took plaintiff Shakima Jones into the house, while handcuffed, and demanded that plaintiff Jones tell defendants who occupied each room of the residence;
39. At some point one of the defendants found a sneaker box, and let the box fall on the floor, and out fell cigarettes and small amount of marijuana. At that point one of the defendants said "I hit the jackpot!"
40. Following the finding of the small amount of marijuana, the defendants began to search the entire house;
41. One of the defendants found a scale in a drawer in the kitchen;
42. One of the defendants said that everyone will be able to go free if plaintiff Shakima Jones told the defendants where "the gun" was, and plaintiff Shakima Jones said there was no gun in the house;

5

43. Shortly thereafter, one of the defendants, looking at the identification of plaintiff Shakima Jones, and stated that the name was familiar, and the defendant stated that Shakima Jones had "gotten some of my best officers in trouble." This defendant struck plaintiff Shakima Jones in the head.

44. Another one of the defendants claimed that he found "buy" money in a sneaker of plaintiff Shakima Jones, a twenty dollar bill. Plaintiff Shakima Jones had not put that twenty dollar bill in her sneaker;

45. One of the defendants took money out of the pocketbook of the plaintiff Priscilla Billips;

46. Money was also missing from the bedroom of plaintiff Elizabeth Rink after the defendants had entered that room and searched it;

47. Defendants took plaintiff Shakima Jones to the police van, and plaintiffs Billips, Rink, and the infant D.J. were then released from custody.

48. Plaintiff Shakima Jones was held for approximately three days before being released on her own recognizance.

49. Plaintiff Shakima Jones' criminal case was adjourned in contemplation of dismissal in early 2012.

50. Plaintiff infant D.J. was visibly distraught with the unlawful entry into the premises of the defendant officers, and infant D.J. was crying loudly.

51. The Defendants' actions in arresting the plaintiffs and unlawfully entering their residence were objectively unreasonable, illegal, and not based upon any probable cause.

52. At no time did there exist sufficient cause to seize or arrest the plaintiffs, nor could the defendants have reasonably believed that such cause existed.

53. At no time did any one of the defendants, take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against the plaintiffs.

54. That at all times relevant herein, the defendants were on duty and the defendants were all acting within the scope of their employment, and the defendants' unlawful acts were committed in furtherance of the City of New York's interests, and without legal justification or excuse.

**FIRST CAUSE OF ACTION**

55. Plaintiffs repeat the allegations contained in paragraphs "1" through "54" above as Though stated fully herein.

56. Defendants willfully and intentionally seized, searched, detained and arrested plaintiffs without probable cause, and without reasonable basis to believe such cause existed.

57. By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, unlawful searches of person and property, denial of due process, and malicious prosecution, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' right under the Fourth and Fourteenth Amendments of the United States Constitution.

58. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, and the deprivation of liberty, and the loss of their constitutional rights.

**SECOND CAUSE OF ACTION**

59. Plaintiff repeats the allegations contained in paragraphs "1" through "58" above as though stated fully herein.

60. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the New York City Police Department ("NYPD").

61. Defendant Municipality New York City had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, and other blatant violations of the United States Constitution and the established rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendant Municipality New York City took no steps to ensure that reasonable and appropriate levels of supervision would be put into place to reasonably ensure that NYPD members would execute their duties in a lawful and proper manner, including, but not limited to, the use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiffs herein.

62. The Defendant City of New York <u>deliberately</u> and <u>intentionally</u> chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created, through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiffs' arrest.

63. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant, The City of New York. The individual defendants, in their capacities as New York City police officers, acted pursuant to customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD; all individual defendants acted under the direct supervision of higher-ranking officers of the NYPD.

64. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

   a. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

   b. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

   c. Retaliating against officers who report police misconduct; and

   d. Failing to intervene to prevent the above-mentioned illegal and unlawful practices when such intervention should reasonably follow any misconduct, especially when said misconduct was known to supervising and policy-making officials.

In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged."

65. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

66.    It is therefore clear that the municipal Defendant City of New York has not only tolerated, but actively fostered a lawless atmosphere within the NYPD, and that the City of New York has been deliberately indifferent to the risk that the inadequate level of supervision of New York City Police officers would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular herein.

67.    By reason thereof, defendant Municipality of the City of New York and the individual defendants have violated Title 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional injuries, mental anguish, incarceration the deprivation of liberty, and the loss of their constitutional rights.

## THIRD CAUSE OF ACTION

68. Plaintiffs repeat the allegations contained in paragraphs "1" through "67" above as though stated fully herein.

69. At no time did the defendants have any legal basis for arresting or imprisoning plaintiffs, nor by the defendants having commenced and perpetuated the unlawful criminal process, including, but not limited to a period of 2-3 days of incarceration of the Plaintiff Shakima Jones, nor was there any reasonable basis to believe that said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

70. The defendants are therefore liable to plaintiff for false arrest and false imprisonment.

71. By reason thereof, Defendants have caused plaintiffs to suffer emotional injuries, mental anguish, the loss of their constitutional rights, and the deprivation of their liberty due to unlawful detention and incarceration.

## FOURTH CAUSE OF ACTION

72. Plaintiffs repeat the allegations contained in paragraphs "1" through "71" above as though stated fully herein.

73. The defendants, individually, jointly and severally, and through their agents, servants, employees, and/or associates were responsible for the proper, adequate and necessary permissible police and law enforcement conduct with respect to any interaction with plaintiffs.

74. The police and law enforcement conduct engaged in and rendered to plaintiffs by the individual defendants, individually, jointly and through their agents, servants, employees, and/or associates was careless and negligent and not in accordance with good and accepted police and law enforcement practices and in violation of NYPD policies and procedures and was not otherwise reasonable conduct under the circumstances then and there existing.

75. As a result of the carelessness and negligence and violation of NYPD procedures and policies by the respective defendants, their agents, servants, employees and/or associates, plaintiffs were caused to sustain severe and irreparable personal injury and damage.

76. By reason thereof, the defendants have caused plaintiffs to suffer emotional and physical injury, mental anguish, and to be unlawfully detained and incarcerated.

## FIFTH CAUSE OF ACTION

77. Plaintiffs repeat the allegations contained in paragraphs "1" through "76" above as though stated fully herein.

78. Defendants willfully and intentionally seized, arrested, and imprisoned plaintiffs without cause, and without a reasonable basis to believe such cause existed, and in so doing, violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under Article 1, §§11, 12 of the Constitution of the State of New York.

79. Defendants' violation of plaintiffs' state constitutional rights was knowingly undertaken with the intent to deny the plaintiffs their right to full and equal benefit of the laws of the State of New York.

80. By reason thereof, defendants have caused plaintiffs to suffer emotional and physical injuries, mental anguish, and the loss of their constitutional rights.

## SIXTH CAUSE OF ACTION

81. Plaintiffs repeat the allegations contained in paragraphs "1" through "80" above as though stated fully herein.

82. One of the defendants struck plaintiff Shakima Jones in her head. Such assault and battery was committed intentionally, wantonly, maliciously, and without any justification whatsoever.

83. The defendants are therefore liable to plaintiffs for assault and battery.

84. By reason thereof, defendants have cause plaintiff Shakima Jones to suffer physical and emotional injury resulting from the assault and battery committed by defendants.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demands judgment against all the defendants jointly and severally as follows:

1. on the causes of action one through six, actual and punitive damages in an amount to be determined at trial;

2. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

3. such other relief as the Court deems just and proper.

Dated: Port Washington, New York
May 18, 2012

By: [signature]

James Concemore Neville (JN-2128)

Law Office of James C. Neville
14 Vanderventer Avenue, Suite 115
Port Washington, New York 11050
Telephone:  (516) 883-5905
Facsimile:  (516) 883-9508
E-Mail:     jcneville@optonline.net

14